In re Joseph M. FABIAN, a/k/a Joseph Fabian, Jr., t/a Fabian's Hardware, and Jean W. Fabian, his wife, Debtors.

### Bankruptcy No. 87–3149–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 26, 1990.

---

John P. Vetica, Pittsburgh, Pa., for debtors.

K. Lawrence Kemp, New Kensington, Pa., Chapter 7 Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an objection by the chapter 7 trustee to an exemption claimed by debtors. The trustee seeks to have vacated an order of this court granting debtors leave to amend Schedule B–4 of their bankruptcy petition or, alternatively, to have the court determine that debtors are not entitled to exempt certain shares of stock.

The trustee contends that debtors are not entitled to exempt the stock pursuant to 11 U.S.C. §§ 522(g), (h) and (i)(1) for a variety of reasons, largely having to do with a pending adversary action which the trustee has brought against First National Bank of Leechburg ("Bank")

Debtors argue that they are not prevented by these provisions of the Bankruptcy Code from claiming an exemption because Bank had returned the shares to debtors before the trustee brought the action against Bank.

For the reasons set forth below the trustee's objection will be sustained and the order permitting the amendment to the Schedules will be vacated.

I

## FACTS

At an unstated time prior to November 19, 1987, debtors had pledged one (1) share of stock in New Bethlehem Bank and five (5) shares of stock in Armstrong County Trust Company to Bank. On November 19, 1987, debtors filed a voluntary chapter 13 petition. The various schedules of the bankruptcy petition were not filed until December 14, 1987, pursuant to a court-ordered extension.

Question 14b of debtors' Statement of Financial Affairs For Debtor Engaged In Business reads in pertinent part as follows:

Have you made any transfer, absolute or for the purpose of security, or any other

disposition which was not in the ordinary course of business during the year immediately preceding the filing of the original petition therein? ...

Debtors answered "No" to the Question 14(b).

On Schedule A–2 (Creditors Holding Security), debtors listed Bank as holding the first and second mortgages on their residence. No reference was made, however, to any shares of stock which Bank held as security.

Various items were listed on Schedule B–2 (Personal Property). No shares of stock in which debtors had a property interest were listed.

Schedule B–4 (Property Claimed As Exempt) was not among the schedules filed by debtors on December 14, 1987. As a result, no exemption in any asset generally and stock specifically was claimed.

This case was converted to a chapter 7 proceeding on February 11, 1988, after objections to the chapter 13 plan were sustained and after it was clear that a confirmable plan would not be proposed. The chapter 7 trustee was appointed on February 18, 1988.

On February 23, 1988, Bank filed a motion for relief from stay with respect to the above shares of stock. Bank alleged that it held a promissory note in the amount of $10,500.00 and that it held said shares of stock as collateral. This motion was the first indication that debtors owned any shares of stock. Debtors alleged in response to Bank's motion that the stock had been delivered to Bank within ninety (90) days of the bankruptcy petition. They opposed the motion for relief on the ground that the chapter 7 trustee should have an opportunity to determine whether to bring a preference action against Bank.

A hearing was held on Bank's motion on March 22, 1988. Determination was deferred as Bank had not served the chapter 7 trustee with its motion. Bank did not subsequently prosecute its motion.

For reasons unknown, sometime prior to April 30, 1990, but during the bankruptcy case, Bank, without notice to the trustee or the court, returned the shares of stock to debtors, as opposed to the trustee. Authorization to return the stock to debtors (rather than the trustee) was neither sought by Bank nor granted by the court.

On April 30, 1990, the trustee brought a preference action against Bank in which the trustee sought to recover the shares of stock that debtors had pledged to Bank as collateral.

Debtor Joseph Fabian died on May 6, 1990. Debtors had sold the shares of stock prior to his death to third parties and utilized the funds for their own benefit. Debtors neither sought nor received permission to dispose of these estate assets.

On August 16, 1990, nearly two and one-half (2½) years after Bank had filed its motion for relief from stay and some three and one-half (3½) months after the trustee had brought action against Bank, debtors filed a motion to amend Schedule B–4 of their bankruptcy petition. They sought leave of court to exempt their personal residence ($6,000.00), household goods and clothing ($3,000.00), automobiles ($1,000.00), and the above shares of stock ($5,300.00).

On August 20, 1990, an order was entered which granted debtors leave to amend Schedule B–4 in the manner requested. However, the court specifically granted the trustee a time frame to seek vacation of the order and/or object to the exemption. It is this order which the trustee seeks to have vacated.

## II

### ANALYSIS

*All* legal and equitable interests of a debtor in property as of the commencement of a case become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Property recovered by the trustee is included. *See* 11 U.S.C. § 541(a)(3). Also included in the estate is property which the debtor needs for a "fresh start". Once the estate has been created, the debtor is permitted to request the court to permit an exemption of certain property from the estate. *In re*

*Roberts*, 81 B.R. 354, 362 (Bankr.W.D.Pa. 1987).

■ Section 522 provides various means whereby a debtor may recover or otherwise protect assets that could be exempted from creditors' claims. A debtor may, under certain conditions, exempt certain assets which the *trustee* has recovered on behalf of the bankruptcy estate. A debtor may also, under certain conditions, bring an action *on its own behalf* to recover certain assets and thereafter exempt them.

Specifically, a debtor may exempt certain assets where the trustee has brought suit against a third party and uses his own avoiding powers to bring assets back into the estate, provided that:

(1) the debtor neither voluntarily transferred the assets out of the estate nor concealed them; or

(2) the debtor could have avoided the transfer of a nonpossessory, nonpurchase-money security interest in certain types of property.

11 U.S.C. § 522(g).

A debtor may also act on its own behalf and avoid judicial liens and nonpossessory, nonpurchase-money security interests in certain types of property. 11 U.S.C. § 522(f). In addition, if the trustee could have avoided a transfer pursuant to 11 U.S.C. § 522(g)(1), but did not, and if the debtor could have exempted the property had the trustee avoided it, then the debtor is permitted to "step into the trustee's shoes" and avoid the transfer himself. 11 U.S.C. § 522(h). If a debtor avoids and recovers a transfer pursuant to 11 U.S.C. § 522(h), the debtor may exempt the property. 11 U.S.C. § 522(i)(1).

As has been noted, the trustee has brought an adversary action against Bank in which he seeks to avoid and recover for the bankruptcy estate the shares of stock which debtors had pledged as collateral to Bank. This action is pending and has been set for trial at a future date.

The trustee argues that debtors may not exempt the stock under § 522(g)(1) because the stock was voluntarily transferred by debtors and because they concealed their ownership of the stock. The trustee further argues that debtors may not exempt the stock under § 522(i)(1) because debtors are not entitled to bring an action on their own behalf pursuant to 11 U.S.C. § 522(h) in light of the trustee's pending action against Bank.[1]

■ Debtors deny that they do not qualify under the above provisions of the Bankruptcy Code to claim an exemption in the shares of stock. Specifically, debtors deny that they are not entitled to claim their exemption under § 522(g)(1). While debtors do concede that the initial transfer of the stock to Bank was voluntary, they deny that they concealed their interest in the stock. More importantly, debtors argue that § 522(g) does not apply because the shares of stock had been returned to debtors by Bank before the trustee's action against Bank. Debtors evidently are claiming that § 522(g) does not apply because the trustee's action to recover the stock is moot in light of the prior return of the stock to debtors. Debtors' arguments are without merit.

The circumstances surrounding debtors' claimed exemption in the shares of stock leave little doubt that they concealed their ownership of the stock until they no longer could do so. As has been noted, the shares of stock were not referred to in any of the schedules initially submitted by debtors. Their ownership of the stock was not disclosed until Bank sought relief from stay on February 23, 1988 with respect to said stock. Debtors' ownership of the stock undoubtedly never would have come to light had Bank not sought relief from stay. There is nothing to suggest that debtors themselves would have voluntarily disclosed the existence of the stock.

Moreover, debtors' conduct *after* Bank returned the stock to them, without permission to do so and without notification to the

---

**1.** It is undisputed that debtors may not bring an action in their own right pursuant to § 522(f). Neither a judicial lien nor a nonpossessory, non- purchase-money security interest is involved in this instance.

trustee or creditors, only reinforces the conviction that debtors intended to conceal existence of the stock. Debtors, without permission to do so, sold the stock during this case to third parties and then utilized the proceeds for their own purposes. Debtors intended to keep the existence of the stock a secret so that it would not be included in the bankruptcy estate.

Debtors presented additional legal argument which is not clear. Debtors appear to argue that the return of estate assets somehow conclusively defeats the trustee's preference action. If defeated, debtors theorize that the trustee cannot object to this exemption.

Clearly the shares were an asset of the estate. Equally clearly, the Bank had notice of the estate's legal title to the shares as they had previously requested relief from stay relating to those shares. Without prejudging the future preference action it cannot be conclusively shown that the trustee will be unable to recover the value of the stock even though defendant returned the actual shares. Said return by Bank was to a party without legal title and was completed without Court permission.

More importantly, even if the trustee will not be able to recover from Bank on the theory that the initial transfer of the stock to it constituted a preference, the possibility remains that the trustee will be able, pursuant to 11 U.S.C. § 542(a), to recover from Bank for its unauthorized return of stock to debtors.

■ Although the trustee obviously would not be able to recover the shares of the stock from Bank, the trustee may be able to recover from it the *value* of those shares. A trustee is entitled under § 542(a) to recover the value of estate property from any person or entity who has wrongfully transferred such property, absent a showing by the transferor that the transfer was made in good faith and without notice or knowledge of the bankruptcy proceeding. *In re Gailey*, 119 B.R. 504, 514 (Bankr.W.D.Pa.1990).

■ It follows from the foregoing that debtors may not exempt the shares of stock pursuant to § 522(g). In addition, debtors are not entitled to exempt said stock pursuant to § 522(i)(1), which provides as follows:

If the debtor avoids a transfer or recovers a setoff under subsection ... (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, and may exempt any property so recovered under subsection (b) of this section.

As the above language makes explicit, debtors may exempt property pursuant to this provision only if they have prevailed in an action brought by themselves pursuant to 11 U.S.C. § 522(h). In the case at hand, the trustee is pursuing the alleged preference.

■ In short, debtors may not exempt the shares of stock pursuant to 11 U.S.C. § 522(g)(1), or (i)(1) and, to the contrary, the Order permitting the filing of an amended Schedule B-4 will be vacated. The court is cognizant of the fact that a motion to amend bankruptcy schedule is freely granted. *Matter of Gershenbaum*, 598 F.2d 779 (3rd Cir.1979). There are, however, limitations upon this principle. A debtor may be prohibited from amending a schedule upon a showing, by clear and convincing evidence, of bad faith or prejudice to creditors. *In re Roberts*, 81 B.R. at 359–60.

■ In the case at hand, debtors executed Schedules under penalty of perjury certifying to the extent of their assets. No mention was made in said Schedules of certain valuable assets. There is no indication in this case that debtors ever would have divulged the existence of these assets had not Bank requested relief from stay. Thereafter, for unknown reasons, Bank returned the assets to debtors and debtors exercised ownership over same, conveying them to an undesignated third person. Debtors thereafter utilized the proceeds of said conveyance for their own benefit. Viewing this matter as a totality, the court is convinced that the Schedules were filed in bad faith. It is clear to the court that debtors' subsequent actions indicate a con-

tinuation of this machination. Debtors known activities were detrimental to the interest of creditors who have been delayed and who will have to subsidize the trustee's legal activities. These creditors, and the court, have reason to wonder what they do not know. The creditors have no reason to query the exemption in question, as said Order permitting the amendment will be vacated.

An appropriate Order will be issued.